UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE CRUZ and HENDRO WINOTO,<br>Plaintiffs,<br>v.<br>BRANDON QUANG, NCBI INVESTMENT, INC., SHAO RONG ZHANG, HARDIANTO GO, and ZHOU XIAN CHEN,<br>Defendants. | Case No. 13-CV-00181 VC<br><br>~~**PROPOSED**~~ **ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AS AGAINST BRANDON QUANG AND NCBI INVESTMENT, INC.** AS MODIFIED<br>Re: Doc. No. 85 |

Plaintiffs JOSE CRUZ and HENDRO WINOTO brought this action against BRANDON QUANG and NCBI INVESTMENT, INC. seeking damages arising from Defendants' failure to pay overtime and minimum wages as required by the Fair Labor Standards Act ("FLSA") and California wage orders and statutes. Plaintiffs allege that Defendants failed to compensate Plaintiffs, who are Defendants' former employees, for overtime and minimum wages and are owed those wages, interest and resulting penalties. A claim was also brought under a California's Unfair Competition Act seeking restitution for earned but unpaid wages.

Default was entered against NCBI INVESTMENTS on September 16, 2013, and against QUANG on November 10, 2014. Doc. Nos. 32, 81. On December 4, 2014, Plaintiffs filed their Motion for Default Judgment against BRANDON QUANG and NCBI INVESTMENT, INC. Doc.

No. 85. All other Defendants have been dismissed. A hearing on the motion was scheduled for January 15, 2015; Defendants did not appear. The motion is granted.

## I. BACKGROUND

### A. Factual Background

The facts, as presented in declarations submitted to the Court and as set forth in the pleadings, are as follows:

1. Plaintiff CRUZ's Employment.

Plaintiff JOSE CRUZ began his employment with Defendants and their business, NEW CHINA BUFFET, on or about July 25, 2007 after being recommended by his brother Arnulfo Martinez. When hired, CRUZ was given a room to live in a home with three bunk-beds where 5 other New China Buffet employees slept. *See* Declaration of Jose Cruz ("Cruz Decl.) at ¶¶ 2-4. Defendants' business was a large "all you can eat" buffet style restaurant that often had customers waiting an hour to eat. *Id.* at ¶ 8.

From the beginning of CRUZ' employment with Defendants, he worked 6 days a week and 12 or more hours a day, first as a dishwasher and later as a cook. *Id.* at ¶¶ 6 and 9. CRUZ began each day at 10:00 am and worked until about 10:30 pm or 11:00 pm. *Id.* at ¶¶ 6, 12. On Sundays, CRUZ would leave after 11:00 pm, often staying until 11:15 pm. *Id.* at ¶¶ 6, 15.

Despite the long shifts and working well in excess of 40 hours a week, CRUZ was compensated at first with $1,300.00 a month and later given a raise to $1500.00 a month. *Id.* at ¶¶ 6, 7, 12, 15, and 17. Once he was promoted and given the small raise from $1300.00 a month to $1500.00 a month, CRUZ moved out of the free housing provided by Defendants due to overcrowding and unsanitary conditions and paid rent elsewhere. *Id.* at ¶¶ 5 and 17. Breaking down this wage by the hour, based on a 75.5 hour work week, he made $3.97 per hour when he was paid $1,300.00 and $4.58 per hour when he was paid $1,500.00 a month.

2. Plaintiff WINOTO's Employment.

Plaintiff HENDRO WINOTO ("WINOTO") learned of the NEW CHINA BUFFET through an agency in Southern California. Hendro Winoto Decl. at ¶ 2. WINOTO took the job on February 3, 2011 and drove straight from Los Angeles to NEW CHINA BUFFET. *Id.* at ¶ 3. Upon arrival, WINOTO was met by HARDIANTO GO, who showed WINOTO around the restaurant, explained his job duties and took him back to the residential home where he could stay rent free. *Id.* at ¶ 3. WINOTO slept in a room that he shared with 5 other people who were also employees of NEW CHINA BUFFET. *Id.*

WINOTO worked 6 days a week and 12 hours a day as a server. *Id.* at ¶ 5. WINOTO began his shift at 10:30 am and went through similar routines each day. *Id.* WINOTO would prepare his assigned section by laying out napkins, utensils, and making sure the dining area was clean. *Id.* at ¶ 8. Customers began showing up at 11:00 am and WINOTO would work continuously throughout the day tending to the constant flow of diners while assisting kitchen staff or cleaning the waiter stations and restrooms. *Id.* at ¶¶ 7, 9, and 11.

WINOTO worked without a meal or rest break. *Id.* at ¶ 11. His only real opportunity to eat was in the minutes between the completion of his morning duties and the arrival of the first customer of the day. *Id.* at ¶ 10. On these rare occasions when customers were not already waiting at the door for the restaurant to open, WINOTO would have, at the very most, 15 minutes to eat and not have another break until the day was done around 10:15 pm or 10:30 pm. *Id.* at ¶¶ 10, 11, and 12. Despite the long hours, WINOTO was compensated a flat rate pay of $200.00 per month and allowed to keep whatever he earned in tips at the buffet restaurant. *Id.* at ¶¶ 5 and 18. Essentially, he worked for tips. Breaking down this wage by the hour, based on a 71.5 hour work week, he made $46.15 a week or $1.15 an hour.

3. BRANDON QUANG's Status as the Employer For Individual Liability.

Plaintiff CRUZ declared that QUANG hired him and then presented him to the kitchen manager. *See* Doc. No. 66, Cruz Decl. at ¶ 3. Cruz, who worked at the restaurant since July of 2007 further testified at paragraph 19 of his declaration that QUANG would pay him when QUANG was in town or if not give direction to the managers or his sister in law to pay workers. *Id*. at ¶ 19.

Plaintiff WINOTO, who was able to speak with the front of house manager HARDIENTO GO, has a better understanding of QUANG's involvement. WINOTO, in his supplemental declaration with the Default Motion, declared that his supervisor GO informed him QUANG was the "boss." *See* Winoto Decl. at ¶ 5. WINOTO also relayed that when GO had him go to the bank to get change in coins or small bills, he gave him a deposit slip with QUANG's name to show that he was there as a bank customer for the business. *Id.* at ¶ 6, Exhibit 3.

Plaintiff's counsel also submitted the deposition testimony of QUANG who admitted being the President, Secretary and Treasurer of NCBI. *See* Margain Decl. at ¶ 5, Exhibit 2 at 12:3-6. QUANG also hired the kitchen manager and approved the hiring of HARDIENTO GO. *See* Margain Decl. at ¶ 5, Exhibit 2 at 17:5-12, 32:12-15, 38:4-13. A Purchase and Sale Agreement was also introduced showing that QUANG, acting as the "Chairman of the Board," transferred interest in the restaurant last July. Margain Decl. at ¶ 6, Exhibit 3. Of note, Exhibit 3, the Purchase and Sale Agreement included a "Lease Addendum" in which QUANG agreed to sign any contracts needed to transfer the lease further showing his involvement.

**B. Procedural History**

Plaintiffs filed this action on January 14, 2013. Docket No. 1. The initial pleading, including the summons, civil cover sheet, and complaint, were served on Defendant NCBI INVESTMENTS, INC. via its agent for service of process and Co-Defendant BRANDON QUANG

on January 27, 2013. Docket No. 9. The initial pleadings were again served on NCBI via QUANG on August 5, 2013. Docket No. 25. When no response was filed, Plaintiffs filed a request for entry of default on September 10, 2013. Docket No. 30. Despite being served and being the sole owner of NCBI, QUANG allowed a default to be entered. To date, no response to the complaint was filed or served by NCBI. Huy Tran Decl. at ¶ 3. Default was entered against Defendant NCBI INVESTMENTS on September 16, 2013. Docket No. 32. BRANDON QUANG chose not to participate in the mandatory settlement conference set on November 3, 2014 (Docket No. 71) despite a Court order commanding his attendance (Docket No. 69). QUANG stipulated through counsel to have his Answer stricken. Docket No. 73. The Answer was stricken on November 4, 2014 (Docket No. 75) and default entered on November 10, 2014 (Docket No. 81).

## II. LEGAL STANDARD APPLICABLE TO THE PROCEEDINGS

Pursuant to Federal Rule of Civil Procedure Rule 55(b)(2), the Court may enter a default judgment when the clerk, under Rule 55(a), has previously entered the party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff"s averments."). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due

to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

**III. DISCUSSION**

**A. Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). The Court thus begins by evaluating subject matter jurisdiction and personal jurisdiction.

1. Subject Matter Jurisdiction.

This case is brought under the FLSA and various California wage and hour statutes. Accordingly, there is federal question and supplemental jurisdiction over the action.

2. Personal Jurisdiction.

Plaintiffs allege in their first amended complaint that the Defendants engaged in business in Alameda County. Moreover, the evidence submitted showed that Defendants operated a high volume Chinese "all you can eat" buffet style restaurant in Alameda County. Further, NCBI is a registered California corporation and Defendant QUANG took part in running the business, hiring and paying workers, opening up bank accounts and signing and transferring a lease. Accordingly, there is personal jurisdiction over Defendants.

**B. The *Eitel* Factors favor entry of default judgment**

Application of the *Eitel* factors to this case also supports Plaintiffs' Motion for Default Judgment.

1. Plaintiffs would suffer prejudice if default is not entered.

The first *Eitel* factor considers whether Plaintiffs will suffer prejudice if default judgment is

not entered. *Eitel*, 782 F.2d at 1471-72. Prejudice exists where, absent entry of a default judgment, Plaintiffs would lose the right to a judicial resolution of their claims and they would be without other recourse of recovery. *See Elektra Entm't Group, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005); *Bryant*, 2004 WL 78123 at *3. By virtue of the default, Defendants have admitted the allegations of the complaint, and without a default judgment, Plaintiffs would be deprived of the rights to judicial resolution of their claims for overtime wages. This factor favors a default judgment.

2. Plaintiffs' claims are meritorious and their complaint is sufficient.

The second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citations omitted). As stated above, after the Clerk enters default, the factual allegations of the complaint are taken as true. *TeleVideo Svs., Inc.*, 826 F.2d at 917-18.

Here, Plaintiffs' primary bases for liability against Defendants are the first and second claims in the complaint. Those claims center on how the Defendants improperly paid Plaintiffs in violation of the Fair Labor Standards Act and the California Labor Code, which require them to compensate employees at their overtime rate for their overtime hours. 20 U.S.C. §§ 297, 216(b), and 255(b), and 255(a); Cal. Labor Code §§ 1194(a) and 1815. Plaintiffs declared to the best of their recollection their works hours. Their counsel Huy Tran also prepared an audit of their claims. No time records exist. This permits the Court to rely on Plaintiffs' best estimate of the hours that they worked. *Anderson v. Mt. Clemens Pottery Col*, 328 U.S. 680, 687 (1946) (Where an employer failed to maintain accurate payroll records, an employee carries his burden under the FLSA if he shows he performed work for which he was improperly compensated and produced some evidence to show the amount and extent of that work "as a matter of just and reasonable inference.")

Plaintiffs' first count against the Defendants also includes a claim for liquidated damages under the California Labor Code for violations of its minimum wage law. A worker who is paid less

than the required minimum wage may recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Labor Code § 1994.2. This count applies to both Plaintiffs JOSE CRUZ and HENDRO WINOTO, as they were both paid a monthly salary that fell well below minimum wage. CRUZ states in his declaration that he was paid a monthly salary of $1300.00 per month when he first started his employment. Cruz Decl. at ¶ 17. In 2011, he was given a raise to $1500.00 per month. *Id.* Based on his statements, CRUZ worked 33 hours of overtime a week. Tran Decl. at ¶ 8; Cruz Decl. at ¶ 6.

WINOTO states in his declaration that he was paid $200.00 per month throughout the entire period of his employment. Winoto Decl. at ¶ 18. Based on his statements, WINOTO worked 30.5 overtime hours a week and 30.75 hours of overtime a week when the restaurant required a deep cleaning. Tran Decl. at ¶ 21; Winoto Decl. at ¶ 7 and 16. WINOTO's salary amounted to a wage of $1.15 per hour. Tran Decl. at ¶ 23.

The third claim for relief is for failing to provide noncompliant wage stubs. Plaintiffs waive this claim as against Defendant NCBI INVESTMENTS, INC.

The fourth claim for relief is for waiting time penalties under California Labor Code § 203, which has a three year statute of limitations. A worker who is discharged or quits and whose wages are not paid continues to accrue his daily wages for up to thirty days for a willful violation. California Labor Code § 203. "Willful" in the context of Labor Code § 203 does not require malicious intent. It only requires that the employer paid the employee in the manner that payment was made. *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7 (Cal. Ct. App. 1981). If the Court finds that Plaintiffs are owed for unpaid wages, waiting penalties in the amount of thirty-days' wages should also be awarded because the complaint was filed after the thirty-day period passed.

The fifth claim is for failure to pay meal period and rest break premiums under California Labor Code §§ 226.7 and 512. California Labor Code provides that, "no employer shall require any

employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." California Labor Code § 226.7(a). CRUZ and WINOTO rarely, if ever, had a moment to rest or eat a meal. Cruz Decl. at ¶¶ 12, 13, and 14; Winoto Decl. at ¶¶ 10, 11, and 14. Rather, both CRUZ and WINOTO had no option but to resort to grabbing bites of food here and there in between serving customers. Cruz Decl. at ¶¶ 12, 13 and 14; Winoto Decl. at ¶¶ 10, 11, and 14. This count applies to CRUZ and WINOTO and when an employer fails to provide their employee a meal or rest period, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." California Labor Code § 226.7 and § 512.

The sixth claim permits Plaintiffs to recover an additional year of unpaid wages under California's Unfair Trade Practices Act. *See* Cal. Bus. & Prof. Code § 17200, *et seq.*; *see also Cortex Purolator Air Filtration Products Company*, 96 Cal. Rptr.2d 518, 528 (Cal. 2000).

3. Defendants Will Not Be Prejudiced By The Amount Of Money At Stake.

*Eitel* requires the Court to consider whether Defendants will be prejudiced by the amount of money at stake, the possibility of dispute over material facts, or the possibility of excusable neglect, which are the fourth, fifth, and sixth factors created by the *Eitel* test respectively.

Here, the Court finds that Defendants will not be prejudiced. First, Defendant Quang, who was served as the agent for service of NCBI, made the choice not to file an answer on behalf of the corporation and allow a default to be entered against the corporation while he litigated his case. Then he deliberately chose to abandon the defense of his case.

4. Amount of Money at Stake in Relation to the Seriousness of Defendants' conduct.

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F. Supp. 2d at 1176. Plaintiffs were able to audit their claims using the standard articulated in *Anderson v. Mt. Clemens Pottery*

*Col*, 328 U.S. at 687. The derivative penalties are based on those calculations. Defendants' conduct in paying and housing workers their workers merits the imposition of the full unpaid wage and penalty amounts.

5. Possibility Of A Dispute Over A Material Fact.

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a material fact. *Eitel*, 782 F.2d at 1471-72. The material fact issues in this case are whether Plaintiffs worked overtime hours for Defendants and if they received compliant meal periods. The corporate Defendant failed to make an appearance, despite being served with process, and the individual defendant abandoned his case prior to a mandatory settlement conference and after being deposed. Therefore, allegations of Plaintiffs' complaint should be taken as true. Plaintiffs have also come up with their best recollection of the hours they worked, which is permitted under *Anderson v. Mt. Clemens Potter Co., infra.* As a result, any factual incongruities, even if any exist, should not be used against Plaintiffs. Finally, no credible argument of excusable neglect for paying substantially below the minimum wage was or could be made.

6. Was the Default a Result of Excusable Neglect.

Under the sixth *Eitel* factor, the court considers whether Defendants' default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. However, "[a] Defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F2d 517, 521 (9th Cir. 1987). Here, the corporate Defendant failed to answer or file a responsive pleading despite actual notice of this action and the individual Defendant chose to abandon his case after making an appearance. It is noted that both of these acts occurred while the individual defendant was represented by counsel. As such, there is no excusable neglect.

7. The policy of deciding cases on the merits does not outweigh prejudice to Plaintiff if default judgment is not entered.

The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 729

10 Case No. 13-CV-00181 VC

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NCBI INVESTMENTS, INC. AND BRANDON QUANG

F.2d at 1471-71. "However, this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered." *Caridi*, 346 F. Supp. 2d at 1073. Indeed, Rule 55 specifically authorizes the termination of a case before a hearing on the merits in these precise circumstances. Courts have concluded, "this factor does not weigh very heavily." *Caridi*, 346 F. Supp. 2d at 1073.

This lawsuit cannot proceed to the merits because Defendants failed to appear and defend against this action despite proper notice. As stated above, if default judgment is not entered, Plaintiffs would be deprived of the right to judicial resolution of their claims for overtime wages. However, the merits of each claim will now be reviewed.

a. Plaintiffs Are Entitled To An Award Of Backpay, Liquidated Damages And Interest By Statute.

Plaintiffs' first and second claims allege that Defendants failed to pay them overtime wages. They are entitled to those wages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act and California Labor Code sections 510, 201, and 1194.

Labor Code section 1194(a) states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

While both the FLSA and the California Labor Code have three year statutes of limitations, Plaintiffs can recover their unpaid wages for an additional year under California's unfair competition law as restitution for Defendants' unlawful business practices. *See* Cal. Bus. & Prof. Code § 17200, *et seq.*; *see also Cortex Purolator Air Filtration Products Company*, 96 Cal. Rptr.2d 518, 528 (Cal. 2000). Plaintiffs asserted violations of California's unfair competition law as count six of the complaint.

Plaintiffs have prepared audits showing the wages owed to them. Tran Decl. at ¶¶ 20-26. These amounts are based on Plaintiffs' recollection of their respective overtime hours.

Plaintiffs are also seeking liquidated damages under the Fair Labor Standards Act. Under the FLSA, "[a]n employer who violates the overtime law is liable not only for the unpaid overtime compensation but also 'in an additional equal amount as liquidated damages'." 29 U.S.C. § 216(b). The liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation. *See* 29 U.S.C. § 260; *see also Local 246 Utility Workers Union of America v. Southern California Edison,* 83 F.3d 292 (9th Cir. 1996). The employer must establish that it had "an honest intention to ascertain and follow the dictates of the Act and that it had reasonable grounds for believing that [its] conduct complie[d] with the Act." *Id.* at 298 (internal quotation omitted). Even if the employer meets its burden, the court may still award some liquidated damages. *Id*. "These liquidated damages represent compensation, and not a penalty. Double damages are the norm, single damages the exception." *Id.* at 297. Mere ignorance of the law is not enough to escape double damages.

Because the FLSA has a three-year statute of limitations, Plaintiffs' claims for liquidated damages is limited to the three years prior to the filing of the complaint. Plaintiffs' claim for liquidated damages was also calculated by counsel. Tran Decl. at ¶¶ 14 and 27.

Finally, CRUZ and WINOTO both claim liquidated damages for Defendants' failure to pay them at the statutorily required minimum wage rate. Cal. Labor Code § 1194.2.

b. <u>Plaintiff is entitled to waiting time penalties by statute.</u>

Plaintiffs' fourth cause of action seeks penalty wages for a violation of California Labor Code § 203 which provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a

> penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days.

Section 203 imposes penalties of a day's wages for a period of up to 30 days or until Plaintiff is paid in full. As stated above, "willful" in the context of Labor Code § 203 does not require malicious intent. It only requires that the employer paid the employee in the manner that payment was made. *Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7 (Cal. Ct. App. 1981).

Plaintiffs had different wage rates, and so their claims for waiting time penalties differ from each other. JOSE CRUZ was earned $129.81 per standard 12.5-hour day at the end of his employment and claims $3,894.23 in waiting time penalties. Tran Decl. at ¶ 15. HENDRO WINOTO earned $109.00 per a standard 11.75-hour day at the end of his employment and claims $3,270.00 in waiting time penalties.

c. Plaintiff Is Also Entitled To Recover For Non-Compliant Meal And Rest Breaks.

The declaration of Huy Tran addresses Plaintiffs' claims for non-compliant meal and rest breaks. Recovery is available under the California Labor Code and provides Plaintiffs an hour of additional pay for each violation. CRUZ worked for Defendant for 207 weeks, and each week had 6 shifts, amounting to 1242 shifts in violation. Tran Decl. at ¶ 17. CRUZ claims $20,287.85 in meal and rest break premiums. *Id*. WINOTO worked for Defendant for 127 weeks, and each week at 6 shifts, amounting to 762 shifts in violation. Tran Decl. at ¶ 29. WINOTO claims $12,192.00 in meal and rest break premiums. *Id.*

d. Individual Liability of Brandon Quang.

Pursuant to the FLSA, 29 U.S.C. § 216(b), employees may only seek redress from "employers." "The FLSA broadly defines the 'employer-employee relationship[s]' subject to its reach." *See Torres–Lopez v. May*, 111 F.3d 633, 638 (9th Cir.1997). Under the FLSA, to "employ" is defined as "includ[ing] to suffer or permit to work." 29 U.S.C. § 203(g). "The FLSA's definition of employee has been called the 'broadest definition that has ever been included in any one act.'"

*United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945); *see also Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (noting the "striking breadth" of the "suffer or permit" definition). The Ninth Circuit, among others, has held that "employees" include those workers "who as a matter of economic reality are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir.1979).

Here, defendant BRANDON QUANG effectively ran the restaurant when he was there and put people, by employing two managers or putting his sister-in-law in his place when he was not there. He personally hired and paid CRUZ. CRUZ Decl. at ¶¶ 3 and 19. He also served as the President, Treasurer and Secretary of the Corporation NCBI. *See* Margain Decl. at ¶ 5, Exhibit 2 at 12:3-6.

QUANG also hired the kitchen manager and approved the hiring of HARDIENTO GO. *See* Margain Decl. at ¶ 5, Exhibit 2 at 17:5-12, 32:12-15, 38:4-13. A Purchase and Sale Agreement was also introduced showing that QUANG acting as the "Chairman of the Board" transferred interest in the restaurant last July. Margain Decl. at ¶ 6, Exhibit 3. Of note, Exhibit 3, the Purchase and Sale Agreement included a "Lease Addendum" in which QUANG agreed to sign any contracts needed to transfer the lease further showing his involvement.

With respect to Plaintiff WINOTO, who spoke with HARDIENTO GO, WINOTO was informed that QUANG was "the boss." *See* Winoto Decl. at ¶ 5. Frankly, everyone in the restaurant knew QUANG was the ultimate authority when he was there. *Id.* WINOTO also relayed that when GO had him go to the bank to get change in coins or small bills, he gave him a deposit slip with QUANG's name to show that he was there as a bank customer for the business. *Id.* at ¶ 6, Exhibit 3.

A corporate officer with no ownership interest was held to be an "employer" where, among other things, he began and controlled the corporations, held their purse-strings, and guided their

policies, and where, "speaking pragmatically, [the corporations] were [his] and functioned for the profit of his family." *See Donovan v. Grim Hotel Co.*, 747 F. 2d 966, 971-72 (5th Cir. 1984). In *Chao v. Hotel Oasis, Inc.*, 493 F. 3d 26, 34 (1st Cir. 2007), the Court also held that a corporation's president was personally liable where he had ultimate control over business's day-to-day operations and was the corporate officer principally in charge of directing employment practices.

Here, it should be noted that this is a default case and by having his answer stricken QUANG refused to present a defense. He appears to have set up the system, using the two managers and sister-in-law as a "go between" with workers, while remaining in charge of the money. QUANG was on the bank account, was able to sell the restaurant, and held all key corporate office positions. Plaintiffs were never placed on the payroll of the corporation as all the money was being syphoned from the restaurant.

## IV. CONCLUSION

For the foregoing reasons, the Court orders that Plaintiffs JOSE CRUZ and HENDRO WINOTO shall recover as against Defendants BRANDON QUANG and NCBI INVESTMENT the following:

HENDRO WINOTO:

| | |
|---|---|
| **Unpaid Wages under FLSA and CA law** | **$ 82,205.46** |
| **Minimum Wage under CA law** | **$ 33,662.00** |
| **FLSA Liquidated Damages** | **$ 73,777.90** |
| **CA Labor Code 203 Penalty** | **$ 3,270.00** |
| | |
| **Meal and Rest Breaks** | **$ 12,192.00** |
| | |
| **TOTAL OWED** | **$205,107.36** |

JOSE CRUZ

| | |
|---|---|
| **Unpaid Wages under FLSA and CA law** | **$ 96,895.96** |
| **Minimum Wages under CA law** | **$ 14,484.00** |
| **FLSA Liquidated Damages** | **$ 62,302.50** |
| **Labor Code 203 Penalty** | **$ 3,894.23** |
| | |
| **Meal and Rest Breaks** | **$ 20,698.46** |
| | |
| **TOTAL OWED** | **$198,275.15** |

IT IS SO ORDERED

Dated: January 23, 2015

Hon. VI
United Sta

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
IT IS SO ORDERED
AS MODIFIED
Judge Vince Chhabria

16

Case No. 13-CV-00181 VC

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NCBI INVESTMENTS, INC. AND BRANDON QUANG